Living H. Satpol, J.
The petitioners, presidents of the Par-
ents Associations of Public Schools 76, 180, 149-207 and 144, move for judgment in this article 78 proceeding directing respondents to retain racially, culturally and ethnically integrated school districts in the Borough of Manhattan, and ordering the respondents to hold public hearings on any districting plan for the Borough of Manhattan in conformity with section 2590-b (subd. 2, par. [c]) of the public Education Law.
The respondent Board of Education caused to be published a proposed plan for the Borough of Manhattan. The statute provided, among other things, that each district have no less than 20,000 school population with maximum heterogeneity. This proposed plan offered no hint of any contemplated change affecting former District 5. It indicated further that minimum changes would be made although difficulty would be encountered in complying with the law.
The date of publication of the proposed plan was November 17, 1969, as required. A hearing was held thereon. Thereafter without further hearing the final plan was announced on December 22, 1969. It revealed for the first time the creation of District 4 of which complaint is now made. Proposed District 4 was formerly a part of the Harlem School District. In 1966 the subject area was transferred from the Harlem District to District 5 under the former districting plan for Manhattan. Thereby a racially and ethnically integrated district was created. Nine schools within present District 5 would be transferred under the final plan into District 4 which undisputedly is populated almost entirely by Black people. This previously unannounced change is distinctly an act of regression.
Petitioners contend that the tentative proposed plan was illegal and therefore the hearing held thereon was illegal; that they are entitled to a hearing on this final plan which also in its present form violates Federal and State Constitutions and the legislative mandate.
The court reaches the conclusion that the single hearing on the proposed plan was not a real hearing, amounting to pretense because it is shown without any attempt at contradiction that it was based either on misrepresentation or hopeless expectation of new legislative action enabling redistricting which would comply with the guidelines laid down in section 2590 et seq. of the Education Law.
Further enabling legislation was not forthcoming. The hearing produced a final plan which bears no resemblance to the proposed plan as to which it had been represented by the board, that there was no intention to deviate substantially therefrom, *601 and that there would he a minimum of change in the existing district boundaries. The result was not only totally different from what' had been proposed and promised but, as already indicated, it constitutes regression. In setting up the Manhattan districts, respondents failed to comply with respect to minimum school population, and, more particularly, with the requirement for maximum heterogeneity. The result is contrary to developing trends in this complex area and in violation of the principles enunciated in Brown v. Board of Educ. (347 U. S. 483). Here, proscribed imbalance was in fact reconceived and recreated, surreptitiously (Matter of Addabbo v. Donovan, 22 A D 2d 383, affd. 16 N Y 2d 619, cert. den. 382 U. S. 905) by gerrymandering (Matter of Balaban v. Rubin, 20 A D 2d 438, affd. 14 N Y 2d 193, cert. den. 379 U. S. 881).
If the burden on the respondents was incapable of accomplishment within the enabling legislation either the latter is unconstitutional or the product is unconstitutional, or both. If the legislation is inadequate it would not justify the respondents to produce a noncomplying and unconstitutional result.
Much is said of district-wide and inter-district integrated activities. Attention is repeatedly directed to objectives viewed from the vantage point of district-wide considerations. Obviously this orientation arises from the realities as they are well known which have created schools in ghetto areas that are inevitably all Black schools. The aim then is to create integration and maximum heterogeneity on a district-wide basis. Even this device was disregarded here and the manner and circumstances thereof rendered the single hearing that was held here a subterfuge bordering on deception of those concerned. While those attending the hearing had the right to be heard, yet they had also the right to know what the respondents had in mind and thereupon in the presence of radical deviation to meet any new proposal, especially when the result was contrary to prior representation and statement, of intent. In the light of the history of the enabling legislation, the promulgation of the proposed plan, what was represented in the supporting statement, and the representation of intent, made at the hearing, the conclusion is inescapable that the hearing was not genuine (Morgan v. United States, 304 U. S. 1).
Therefore, a remand of the matter to the respondents is required for further hearing and action in accordance with statute, constitutional requirements, and decisional law. The motion is disposed of accordingly.