Isidore Bollinger, J.
In this article 78 CPLR proceeding, petitioners seek to enjoin the Board of Education (hereinafter referred to as Board) from holding the community district school board elections for the Borough of Manhattan which are scheduled to be held on May 28,1970,, on the basis that the Manhattan Community School District System violates relevant provisions of section 2590 et seq. of the Education Law and the Fourteenth Amendment of the United States Constitution.
Petitioners’ objections are as follows: (1) Community School District 1 has been drawn to produce de facto and de jure segregation, (2) there was a failure to hold a ‘1 fair ’ ’ public hearing before the adoption of the April 13, 1970 Manhattan districting plan, (3) the requirements of section 2590-b (subd. 2, par. [e]) of the Education Law and chapter 121 of the Laws of 1970 deprive qualified registered voters who wish to vote as ‘1 parent ” voters of their right to vote, (4) central registration of voters as required by chapter 121 of the Laws of 1970 was frustrated and (5) no proper notice of registration was published as required by subdivision (e) of section 2590-b of the Education Law and chapter 121 of the Laws of 1970.
As a result of the determination in Matter of Tinsley v. Monserrat (61 Misc 2d 599, revd. 33 A D 2d 316, revd. 26 N Y 2d 110) the Community School District election in the Borough of Manhattan was postponed. Subsequently, chapter 121 of the Laws of 1970 granted to the Board the power to adopt a final districting plan establishing six community districts in the County of New York “ provided that the average daily attendance of pupils in schools and programs which are to be under the jurisdiction of community districts * * * in each such district be no fewer than the average daily attendance in the smallest local school 'board district in the county of New York, as of the first day of October, nineteen hundred sixty-six ” (no less than 15,200 pupils).
The criteria to be utilized in establishing the community district lines are set forth in subdivision 3 of section 2590-b of the Education Law. In applying the statutory criteria the Board was confronted by the fact that the pupil ethnic population of Manhattan, consisting of approximately 44% Black, 38% Puerto Rican, 14% White and 4% Oriental, followed a geographical distribution reflecting long-standing housing patterns over which *1100 the Board had no control (see Robinson, Jr.,, affidavit May 20, 1970). “The common and special educational needs of the communities and children involved ’ ’ is one of the two basic criteria for districting (Education Law, § 2590-b, subd. 3, par. [a]). The Board, in establishing the boundary lines for District 1, contends that the schools contained therein are beset with “ special common educational problems ” and that the special needs of the pupils therein will be served by suitable educational programs. Petitioners ’ stress on the criteria of ‘1 heterogeneity, of pupil population ”, and their consequent proposal as to redrawing of the boundary lines for Districts 1 and 2, are insufficient, in view of all the circumstances herein, to justify the relief requested. Petitioners’ suggestion as to new lines for the said districts would, it appears, result, as to District 1, in a drop from 71% to 66.1% Spanish and an increase from 9.6% to 14.5% White. Complete integration is numerically impossible to achieve in a situation such as is presented here. However, quality education is susceptible of realization together with meaningful degrees of integration. “Heterogeneity” is only one of a set of criteria. Implicit in the criteria enunciated by subdivision 3 of section 2590-b of the Education Law, is the accommodation of one criterion to another with concomitant weighing and balancing. There is no requirement that ‘ ‘ heterogeneity ” receive pre-eminence at the expense of every other consideration. Discretion has been placed in the Board, and this court will not substitute its discretion for the Board’s where there is a reasonable basis for the Board’s action.
It also appears that a public hearing on the tentative district plan was held on April 8, 1970 commencing at 3:00 p.m. and continuing until 2:00 a.m. Petitioners contend that the alleged failure of all of the scheduled speakers to appear and be heard vitiates the purpose of the hearing. No sufficient showing is made to justify such conclusion.
Section 2590-b (subd. 2,, par. [e]) of the Education Law as amended by section 3 of chapter 3 of the Laws of 1970 provides in part: ‘ ‘ The interim board of education shall provide for the registration of persons qualified, pursuant to subdivision three of section twenty-five hundred ninety-c, to vote as ‘ registered voters ’ and ‘ parents ’, for the nineteen hundred seventy election of members of community boards ”. The qualifications for voting in the community board election are set forth in subdivision 3 of section 2590-c of the Education Law. Chapter 121 of the Laws of 1970 also declares that ‘ ‘ The interim board of education shall provide for the central registration, of voters for the nineteen hundred seventy election of members of such *1101 community boards.” (Emphasis supplied.) The office of the Board of Elections for the Borough of Manhattan at 80 Varick Street was utilized for this purpose (see Election Law, § 154). The court takes judicial notice that said office is accessible by means of public transportation. Registration serves as a check against fraudulent voting and insures that only those persons qualified pursuant to the Election Law and Education Law will be permitted to vote. By virtue of subdivision 3 of section 2590-c of the Education Law, there is a class of voters in the community board election who will be permitted to vote in the district in which their child attends school rather than in the district where they reside. Prior registration in the district of residence is of little efficacy where a voter chooses to vote in the district where his child attends school, if such district is different than the district of residence, insofar as a check upon fraudulent voting is concerned.
In light of the postponement of elections in Manhattan, as aforesaid, and pursuant to chapter 121 of the Laws of 1970, an additional one-week period, from April 16 through April 23, 1970, was provided for registration. The election was set for May 28, 1970. It appears that by virtue of press releases and advertisements in the New York Times, the New York Post, the Daily News, and other local community newspapers, the Board during the period of April 15 through April 20,1970, gave notice that permanently registered voters who have children attending schools in Community School Districts other than where they live (or other than where they registered previously as a parent voter) can choose to vote in such other District by registering as a parent voter. Under these circumstances, the requirement of re-registration in connection with changed district lines appears to be a reasonable and constitutional exercise of the authority vested in the Board. Cognizant of the legislative directive as to the time of additional registration, the notoriety attendant upon the postponement of the elections in Manhattan, and the apparently intensive campaign to notify the public of the requirements as to registration, it cannot be said that central registration of voters was frustrated. No sufficient showing in this respect is made by petitioners.
Petitioners’ remaining contentions are also rejected in light of all the aforesaid. Accordingly, the application is denied and the petition is dismissed.